IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SODEXO AMERICA, LLC,<br><br>                   Plaintiff,<br><br>      vs.<br><br>REGIONAL WEST HEALTH SERVICES,<br><br>                   Defendant. | **8:17CV489**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff and Counterclaim Defendant, Sodexo America, LLC (Sodexo) moves the court for partial summary judgment in its favor and to exclude testimony on *Daubert* and related grounds. (Filing No. 53; Filing No. 76). Sodexo's summary judgment motion argues:

1) Regional West's claimed damages on the pharmacy project are barred by a waiver of consequential damages clause in the parties' agreement; and

2) Regional West's claims for damages resulting from an alleged failure to load data are based on pure speculation and conjecture and are thus barred as a matter of law.

(Filing No. 53, at CM/ECF p. 1). Sodexo's motion in limine seeks to exclude testimony of Roy Gifford (Gifford), or any other witness proffered by Defendant and Counterclaim Plaintiff, Regional West Health Services (Regional West) "regarding or relating to the standard of care applicable to construction project manager(s)." (Filing No. 76, at CM/ECF p. 1).

For the reasons stated below, Sodexo's motion for partial summary judgment (Filing No. 53) will be denied in its entirety; Sodexo's motion to exclude testimony on *Daubert* and related grounds (Filing No. 76) will be granted to exclude

1

any Regional West witness from testifying to the standard of care applicable to construction project managers at trial.

## STATEMENT OF FACTS

The following facts are undisputed or considered undisputed for the purposes of this motion.

On November 6, 2015, Sodexo and Regional West entered a five-year Management Agreement (Agreement) for Sodexo to provide facilities and housekeeping services at Regional West. ([Filing No. 1](Filing No. 1) ¶ 7); ([Filing No. 33](Filing No. 33) ¶ 3). The agreement commenced on January 11, 2016 and was scheduled to end on January 10, 2021. ([Filing No. 1](Filing No. 1) ¶ 8); ([Filing No. 33](Filing No. 33) ¶ 3). The Agreement was amended December 2, 2015, and again on January 26, 2016 (January 2016 Amendment). ([Filing No. 1](Filing No. 1) ¶ 9); ([Filing No. 33](Filing No. 33) ¶ 3).

Pursuant to the January 2016 Amendment, Sodexo was contractually obligated to provide a project manager for plant operations and maintenance services. ([Filing No. 55-7, at CM/ECF p. 1](Filing No. 55-7, at CM/ECF p. 1)). Sodexo provided Brian Sullivan as a project manager. ([Filing No. 55-8, at CM/ECF p. 3](Filing No. 55-8, at CM/ECF p. 3)).

On March 29, 2016, the Agreement was amended a third time (March 2016 Amendment), changing the financial terms of the agreement from a "Management Fee" to a "Contract Price" financial arrangement effective April 2, 2016. Exhibits B (Housekeeping Services) and C (Plant Operations and Maintenance and Groundskeeping Services) of the Agreement were replaced in their entirety by Exhibits B and C to the March 2016 Amendment. ([Filing No. 1](Filing No. 1) ¶ 10); ([Filing No. 33](Filing No. 33) ¶ 3).

Section 3.2 of the Agreement governs termination for cause and provides, in relevant part:

> 3.2 <u>Termination for Cause</u>: A. If either Party breaches a material provision hereof ("Cause"), the non-breaching Party shall give the other Party written notice of such Cause. If the Cause is remedied within ten (10) days in the case of failure to make payment when due, or thirty (30) days in the case of any other Cause, the notice shall be null and void. If such Cause is not remedied within the specified period, the Party giving notice shall have the right to terminate this Agreement upon expiration of such remedy period. The rights of termination referred to in this Agreement are not intended to be exclusive and are in addition to any other rights or remedies available to either Party at law or in equity.

([Filing No. 1](#) ¶ 15); ([Filing No. 33](#) ¶ 3); ([Filing No. 55-5, at CM/ECF p. 2](#)).

Section 3.3 of the Agreement governs termination without cause and provides, in relevant part:

> 3.3 <u>Termination without Cause</u>: Either Party may terminate this Agreement, in whole or in part, at any time, without Cause, upon no less than sixty (60) days' prior written notice to the other Party. In the event Client terminates this Agreement without providing the full sixty (60) days' written notice required under this Section 3.3, Sodexo shall be entitled to liquidated damages in an amount equal to the average monthly billing for the prior three-month period, pro-rated to reflect the number of days for which the sixty (60) days' notice was not provided.

([Filing No. 1](#) ¶ 16); ([Filing No. 33](#) ¶ 3); ([Filing No. 55-5, at CM/ECF p. 3](#)).

On September 8, 2017, Regional West sent a letter to Sodexo, purporting to exercise its right to terminate the contract. The letter provided alternative bases for termination citing to Section 3.3 to terminate the Agreement without cause, effective 60 days from the date of receipt, and to Section 3.2 for termination of the

Agreement with cause, effective 30 days from the date of receipt. (Filing No. 1 ¶ 17); (Filing No. 33 ¶ 4); (Filing No. 55-11).

Regional West notified Sodexo on July 24, 2017 by letter that "it is clear Regional West Health Services has suffered monetary damages as a result of the inadequate performances of Sodexo under the facilities and EVS contracts. At this time, we have decided we will pay the invoices through the end of June 2017." (Filing No. 83-13, at CM/ECF pp. 3-4). On October 2, 2017, Sodexo sent Regional West a letter stating Regional West was in arrears in the amount of $465,257.00 and was thereby in breach of the Agreement. (Filing No. 55-17). Regional West thereafter refused to pay certain outstanding invoices issued by Sodexo, claiming it does not owe any additional funds to Sodexo.

Sodexo initiated this action on December 22, 2017, asserting claims against Regional West for breach of contract, breach of the implied covenant of good faith and fair dealing, and account stated. (Filing No. 1).

On February 22, 2018, Regional West filed its Answer to the Complaint, along with a Counterclaim, against Sodexo for breach of contract. (Filing No. 12). On October 29, 2018, Regional West filed an Amended Answer and Counterclaim asserting, among other things, "Sodexo failed to fulfill the project manager services" and as a result, "Regional West had to hire additional labor, consultants, and contractors to secure the performance of what should have been Sodexo's obligations and further suffered damages as result of having to start over on projects mishandled by Sodexo." (Filing No. 33 ¶ 35-36). Regional West claims Sodexo breached the January 26 Amendment in several respects, including by "provid[ing] an unqualified project manager with no healthcare experience, . . . [and] launch[ing] various construction projects without obtaining permits from the

relevant building authorities, and without preparing appropriate scope and budget documents." (Filing No. 55-14, at CM/ECF p. 2).

Sodexo's motion for partial summary judgment raises arguments for judgment as matter of law regarding Regional West's claim to recover damages arising from failure to timely and properly manage the construction of the hospital's pharmacy project, and its Maximo System.

### A. The Pharmacy Project

As described by Regional West,

The purpose of the pharmacy project was to get the space in compliance with hospital regulations. The pharmacy needed updated ductwork to allow for the regulation of temperature, air pressurization and ventilation. The ability to control the temperature and pressurization in a pharmacy is vital to ensuring the drugs contained therein are properly maintained.

(Filing No. 55-15, at CM/ECF p. 14).

Sodexo's first failure on this project came in the form of the Project Manager commencing construction without obtaining a construction permit from the relevant building authority. This led to immediate citations, and the project ultimately being shut down. After this delay, Sodexo eventually obtained the required permits and began construction on the project.

(Filing No. 55-14, at CM/ECF p. 10).

Almost immediately after completion, Regional West began experiencing issues with the pharmacy. Employees complained of temperature fluctuations and pressurization issues. Assistant Facilities Director, Brett Frasier, attempted to manually correct the problem by adjusting various settings in the ductwork software. A competent project manager would have recognized these issues were

5

> outside his scope of his experience and immediately sought out the advice of qualified engineers to diagnose the problem.

([Filing No. 55-15, at CM/ECF p. 15](#)).

In or around April 2017, Regional West hired Roy Gifford (Gifford). Gifford was initially hired by Regional West in 2015 to serve as its interim facilities director. He worked in that position until November 2015, ([Filing No. 83-4, at CM/ECF pp. 3-4](#)), and from November 2015 to April 2017, he remained available to Regional West on an on-call basis. ([Filing No. 83-4, at CM/ECF p. 4](#)). Regional West designated Gifford as their corporate representative pursuant to [Fed. R. Civ. P. 30(b)(6)](#). ([Filing No. 55-9, at CM/ECF p. 3](#)).

Sodexo and Regional West disagree on what caused the failure of the pharmacy project. Sodexo argues any failures in the project were due to the third-party failures of mechanical engineers (Olsson Associates) and contractors, (Beckenhauer Construction). ([Filing No. 84, at CM/ECF p. 9](#))[1]. In contrast, Regional West contends the failures were a product of Sodexo's failure to provide project management services in violation of the Agreement.

Gifford testified that due to Sodexo's failure to provide competent project management, the pharmacy project had to be basically redone, resulting in costs incurred by Regional West, including, but not limited to costs associated with the removal and reinstallation of drywall along with additional electrical work. ([Filing No. 55-9, at CM/ECF p. 12](#)). Gifford further testified that the design provided by Olsson Associates did not work. ([Filing No. 55-9, at CM/ECF p. 11](#)).

---

[1] Sodexo argues, "Regional West Cannot Recover Damages Against Sodexo for the Alleged Failures of Third Parties."

Regional West claims damages of $348,146.37 due to the alleged breach by Sodexo, (Filing No. 83-2, at CM/ECF p. 3), with $305,896.03 of costs incurred for tearing out and redoing unsatisfactory work performed under the supervision or direction of Sodexo's project management services and $42,251.00 incurred to pay for those inadequate and/or untimely services. (Filing No. 82, at CM/ECF p. 25). Of the $305,895.03, $285,787.58 is attributable to invoices received from Beckenhauer Construction, and the remaining $20,108.45 is attributable to invoices received from Olsson Associates. (Filing No. 83-3, at CM/ECF p. 12).

Sodexo argues the damages alleged by Regional West are consequential damages which cannot be recovered under the parties' Agreement. (Filing No. 53, at CM/ECF p. 1). Section 6.5(B) of the Agreement states:

> Consequential Damages. In no event shall either Party be liable for consequential, indirect or incidental damages (including punitive damages and lost profits), even if such Party has been advised of the possibility of such damages in advance.

(Filing No. 55-5, at CM/ECF p. 8). Regional West disagrees, arguing their alleged damages were directly caused by Sodexo's failure to competently and timely manage the pharmacy project as required under the Agreement.

### B. Maximo System

Pursuant to the Agreement and its subsequent amendments, Sodexo was obligated to "implement its Computerized Maintenance Management System software program ('CMMS') at the Premises." (Filing No. 55-5, at CM/ECF p. 28; (Filing No. 55-10, at CM/ECF p. 15).

> The CMMS enhances Sodexo's ability to manage, at a minimum: (i) effective employee job performance, (ii) planned preventive maintenance requirements, (iii) corrective/demand repairs and

7

maintenance, (iv) the database of Client's maintenance/asset information, and (v) the collection and reporting of data to enable Client to make informed decisions regarding maintenance activity at the Premises.

(Id.).

Upon termination of the Agreement, Sodexo was to remove the CMMS software, with Regional West agreeing it would not retain such software beyond the termination of the Agreement. (Id.). The Agreement also provides: "Data processed by the software shall remain the property of Sodexo; however, at Client's request, upon termination or expiration of this Agreement Sodexo shall provide Client with a copy of the data processed by such software in a format to be mutually agreed upon by the Parties." ([Filing No. 55-5, at CM/ECF p. 10](Filing No. 55-5, at CM/ECF p. 10)).

Regional West claims Sodexo failed to effectively implement Maximo[2] at Regional West while simultaneously mismanaging Regional West's existing data. ([Filing No. 83, at CM/ECF p. 23](Filing No. 83, at CM/ECF p. 23)). It further alleges that upon termination of the Agreement, Sodexo failed to provide Regional West with an electronic copy of the Maximo data despite its contractual obligation to do so. ([Filing No. 83-4, at CM/ECF p. 11-12](Filing No. 83-4, at CM/ECF p. 11-12)).

Regional West seeks $25,000.00 in damages for Sodexo's breach of Maximo terms of the Agreement. In arriving at that number, Gifford testified he considered the "[w]asted time of the hourly wages of the mechanics[,]," ([Filing No. 83-4, at CM/ECF p. 24](Filing No. 83-4, at CM/ECF p. 24)), the fact that Regional West had to hire consultants to help migrate the data Regional West still had, ([Filing No. 83-4, at CM/ECF p. 20](Filing No. 83-4, at CM/ECF p. 20)), and the missing data and information that Sodexo should have collected during its

---

[2] The name of the Computerized Maintenance Management System (CMMS) software program ('CMMS').

tenure and then provided to Regional West upon termination of the Agreement (Filing No. 83-4, at CM/ECF p. 22).

Sodexo argues Regional West cannot prove causation; specifically, Regional West's $25,000.00 damage claim is the subscription cost Regional West would have inevitably incurred for new software once the Agreement was terminated with or without a finding of breach. (Filing No. 54, at CM/ECF p. 12). Sodexo further argues the $25,000.00 damage amount is speculative; that the number was simply "picked" by Gifford because he thought it was "fair." In support of this argument, Sodexo cites the following deposition testimony provided by Gifford:

> **Q.** Well, I suppose in theory you could quantify that if you tried to. You could figure out how long it spent any particular person to go out and obtain the data. Is that a fair statement?
>
> [Objection from counsel].
>
> **A.** $25,000 is my fair statement.
>
> **Q.** So the -- this is just a number that you picked on us as a fair amount of damages associated with the failure to provide the data by Sodexo?
>
> [Objection from counsel].
>
> **A.** Yes.

(Filing No. 55-9, at CM/ECF p. 15).

Sodexo seeks summary judgment in their favor on the Maximo provisions of the Agreement, arguing Regional West cannot present admissible evidence of damages. (Filing No. 53, at CM/ECF p. 1).

9

SUMMARY JUDGMENT MOTION

I. <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997). The court does not weigh evidence in the summary judgment record to determine the truth of any factual issue. It merely determines whether there is evidence creating a genuine issue for trial. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are left for trial. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 251-52.

II. Analysis

The parties have invoked this court's diversity jurisdiction. There are no federal claims raised by the parties' respective breach of contract claims. "When a federal district court exercises its diversity jurisdiction over claims brought under state law causes of action, it is bound by the state's law as determined by the highest court in that state." EMS, Inc. v. Chegg, Inc., No. 8:11CV113, 2012 WL 5412956, at *3 (D. Neb. Nov. 6, 2012). As such, Nebraska contract law governs the disposition of this diversity action.

a. **Consequential Damages**

Sodexo argues that the damages flowing from any alleged breach of contract related to the pharmacy project are consequential damages and cannot be recovered under the Agreement. Regional West disagrees, arguing its alleged damages were directly caused by Sodexo's breach.

The Nebraska Supreme Court recently defined consequential damages in U.S. Pipeline, Inc. v. N. Nat. Gas Co.:

> Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from a breach of contract itself. Rather, they occur as a consequence of special extracontractual circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made. Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract. One common example of consequential damages is the lost profits or revenues from outside parties, lost business opportunities, or other sums forgone as a result of a breach of contract.

303 Neb. 444, 466–67, 930 N.W.2d 460, 476 (2019).

Sodexo argues "the need for remediation or rework of the Pharmacy Project did not arise within the scope of the immediate transaction between Regional West and Sodexo… any need for repair stemmed from loss incurred by the Regional West in its dealings with a third party—Olsson Associates." ([Filing No. 54, at CM/ECF p. 19](#)). Sodexo states, "Regional West's damages are all a product of… alleged failure to 'catch' the mistakes of the architects, engineers, or contractors actually hired to perform the work" and therefore the "costs to remove or replace 'drywall' or 'electrical equipment' are…consequential damages...[3]" ([Id.](#)).

Citing to Sodexo's agreement to provide a project manager[4], Regional West argues its damages were directly caused by Sodexo's failure to "live up to the bargain it made." ([Filing No. 82, at CM/ECF p. 22](#)). Viewed in the light most favorable to Regional West, the non-moving party, Sodexo failed to provide the following project management services for the pharmacy project:

- Sodexo did not obtain plans or drawings at the start of the project and as a result, Nebraska State Fire Marshal shut down the project in October 2016 due to failure to submit plans. ([Filing No. 83-15, at CM/ECF pp. 3-4](#); [Filing No. 83-16](#)).

---

[3] Sodexo cites to [Keystone Airpark Auth. v. Pipeline Contractors, Inc.](#), No. 1D17-2897, 2019 WL 323775, at *3 (Fla. Dist. Ct. App. Jan. 25, 2019) for the proposition that "the cost to repair or replace property damaged following deficient inspections or other services constituted consequential damages." The court does not find this case persuasive given that the Florida court noted all the cases they cited to as support for their position were distinguishable because the contract at issue expressly required the defendant to inspect, observe, and monitor the work being done. Further, the court appeared to be uncertain of their own conclusion as they certified the question to the Florida Supreme Court as one of great public importance. The Florida Supreme Court declined the opportunity to review. [Keystone Airpark Auth. v. Pipeline Contractors, Inc.](#), No. SC19-314, 2019 WL 1371949, at *1 (Fla. Mar. 27, 2019).

[4] "Sodexo's Project Manager shall provide administrative oversight as a Construction Project Manager/owners representative, which shall include the provision of oversight and daily coordination activities between Client and the Client's general contractor(s) for the facility projects, working with the Architecture and Engineering team to develop Schematic, Design Development, and Construction Drawings suitable for bidding, ensures that permits are obtained timely, and negotiates bids with the General Contractor." ([Filing No. 55-7, at CM/ECF p. 1](#)).

- Work resumed without plans or drawings, and Sodexo oversaw the building of a wall without permits or plans. ([Filing No. 83-5, at CM/ECF pp. 9-10](#)).

- Sodexo contacted Olsson Associates, the engineers it hired, about preparing drawings or plans in January 2017, months after the project's July 2016 start date, ([Filing No. 83-8](#); [Filing No. 83-9, at CM/ECF p. 2](#)), and acting through its employee, Brett Frasier, told Beckenhauer Construction on January 21, 2017 by email that "things in a hospital need to be designed." ([Filing No. 83-21, at CM/ECF p. 1](#)).

- On January 27, 2017, the City Inspector placed a red tag on the project and shut down the whole project for not having permits or drawings. The inspector also indicated that the plans would need to go to the State Fire Marshal for approval. ([Filing No. 83-9, at CM/ECF p. 2](#)).

- Sodexo received the initial pharmacy drawings from Olsson Associates on February 27, 2017. ([Filing No. 83-18, at CM/ECF pp. 1-2](#)). When Sodexo's project manager "looked at the drawings he was in disbelief as to what has been added." ([Filing No. 83-10, at CM/ECF p. 2](#)). Beckenhauer Construction advised "all the work that has been done to date will need to be removed and redone to accommodate the drawings." ([Id.](#)).

- Sodexo's project manager set up a web-ex meeting with Olsson Associates that same day to discuss why so much had been redesigned, and during that meeting, discussed trying to salvage the use of some of the existing ductwork. ([Id.](#)).

- In preparing the drawings, Olsson Associates advised Sodexo that it was making certain assumptions regarding chilled water temperatures in the system and stated that "if they aren't met that is when dehumidification problems will occur." ([Filing No. 83-11, at CM/ECF p. 2](#)). Sodexo's Assistant Facilities Director, Paul Webering, requested a "calculation or guarantee" that they would not exceed 65% relative humidity in the pharmacy, stating, "This is a priority for me as I want to do this once and right." ([Id.](#)).

- Sodexo recognized humidity control was "important" and knew that there were issues with the chilled water system prior to the

13

completion of the pharmacy project, but it did nothing to address those issues and instead turned the pharmacy back over to Regional West without warning about potential issues. ([Filing No. 83-15, at CM/ECF pp. 14-15](#)).

As a result of the above alleged supervisory and project management failures, Regional West claims they paid for services that turned out to be useless to them and the project had to be nearly completely redone. Although Sodexo argues that it was contractually prohibited from substantive decision making,[5] a jury could find that the failures of the pharmacy project were not due to lack of substantive decisions, but Sodexo's failure to competently and timely supervise and manage implementation of the pharmacy construction project. Specifically, a jury could find that Sodexo failed to fulfill its responsibility of "oversight and daily coordination activities…" or "…working with the Architecture and Engineering team to develop Schematic, Design Development, and Construction Drawings…" by failing to contact an engineering firm about preparing drawings or plans for the pharmacy project until several months after the project began, and failing to secure plans and permits from the outset. The evidence supports a finding that more than six months after the project began, the City Inspector halted it for lack of permits and plans for the successful engineering of the pharmacy.

When Olsson Associates was then contacted to draw up plans, those plans required dismantling and redoing work that was previously performed. Finding this to be an unsatisfactory result, Sodexo's project manager worked with Olsson Associates to try to use some of the existing ductwork, but these design changes did not work. ([Filing No. 55-9, at CM/ECF p. 11](#)). From this evidence, a jury could reasonably conclude that Olsson Associates' February 2017 plans "did not work"

---

[5] "In no event will Sodexo participate in substantive decision making for Client's facility project. It is specifically understood that Sodexo is providing no substantive or policy management for Client's facility project; Client shall maintain the responsibility for safety for its Premises." ([Filing No. 55-7, at CM/ECF p. 1](#)).

because they were not requested by the project manager provided by Sodexo at the outset, and by the time those plans were requested, instead of using an optimal design plan, modifications were made to the existing structure in an effort to salvage some of the work and expense already incurred. Under such circumstances, Regional West's costs for products and services rendered that ended up being unusable and their costs for remediation work were directly caused by Sodexo's failure to provide project management services in violation of the Agreement. A contrary finding would allow Sodexo to escape any imposition of damages despite its failure to perform its duties under the contract.

Sodexo's motion for a ruling, as a matter of law, that Regional West is seeking consequential damages arising from the pharmacy project when such damages are contractually prohibited is denied.

### b. Damages based on Speculation and Conjecture

Sodexo seeks partial summary judgment on Regional West's claim for $25,000.00 in damages for Sodexo's failure to effectively implement Maximo at Regional West while simultaneously mismanaging Regional West's existing data. Sodexo claims this damage figure is speculative; that it was simply "picked" by Gifford because he thought it was "fair."

"A plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages." Shipler v. Gen. Motors Corp., 271 Neb. 194, 231, 710 N.W.2d 807, 839 (2006). "The general rule is that uncertainty as to the fact of whether damages were sustained <u>at all</u> is fatal to recovery, but uncertainty as to the amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss." Pribil v. Koinzan, 266 Neb. 222, 226, 665 N.W.2d 567, 572 (2003) (emphasis added). The

party alleging damages "has the burden to prove the amount of damages with as much certainty as the case permits." [LeRoy Wevant & Sons, Inc. v. Harvey, 212 Neb. 65, 68, 321 N.W.2d 429, 431 (1982)](#).

As to the Maximo provisions of the Agreement, Sodexo's argument is limited to the damages element of the breach of contract claim. Regional West argues its damage assessment is not based on speculation. "Mr. Gifford testified that the amount of claimed damages included the consideration of the wasted hourly wages of the Facilities Department mechanics manually collecting data already available to Sodexo; the missing information and data that should have been collected during Sodexo's tenure; and Regional West's hiring of consultants to help remedy the situation." ([Filing No. 82, at CM/ECF p. 30](#)).

Under the facts presented, the court will not rule, in limine, on whether there is sufficient foundation for the testimony on damages arising from the Maximo claim. That issue is best determined at trial, as such, Sodexo's motion for partial summary judgment on the Maximo breach of contract claim is denied.

## MOTION IN LIMINE

Sodexo asserts that because Regional West failed to designate an expert[6] to offer testimony on the standard of care applicable to construction project managers, Gifford, or any other Regional West witnesses should be barred from offering opinion testimony on the matter pursuant to [Rules 701 and 702 of the Federal Rules of Evidence](#) and [Daubert v. Merrell Dow Pharm., Inc.](#), 509 U.S. 579 (1993). ([Filing No. 77, at CM/ECF p. 1](#)).

---

[6] The court's September 27, 2018 Order provides the deadline for Regional West to identify an expert witness as January 28, 2019. ([Filing No. 27, at CM/ECF p. 2](#)).

When a witness is not testifying as an expert their testimony is in the form of opinion testimony and must be limited to testimony which is:

  a. rationally based on the witness's perception;

  b. helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

  c. not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Rule 702, governing expert testimony states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

  a. The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  b. The testimony is based on sufficient facts or data;

  c. The testimony is the product of reliable principles and methods; and

  d. The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Regional West is not requesting the court certify Gifford as a qualified expert permitted to testify under Rule 702 and does not dispute that they failed to identify Gifford or any other Regional West witness as an expert as required under the Federal Rules of Civil Procedure 26(a)(2).

Regional West argues this motion is premature as only Sodexo has solicited opinions from Gifford up to this point. (Filing No. 79, at CM/ECF p. 2-3). Regional West has yet to disclose any opinions to be offered by Gifford at trial. (Id.). Further, Regional West contends that any testimony by Gifford would be as a fact witness

17

and that Gifford is "entitled to testify about those matters he was personally involved in, including what he discovered when he returned to Regional West after Regional West's leadership became dissatisfied with Sodexo's performance." (Id. at p. 3).

The court agrees with Regional West that this motion is premature in that the court cannot say in advance that *any* opinion testimony by Gifford or any other Regional West witness is improper. However, to the extent Regional West plans to call a witness to testify to the standard of care applicable to construction project management, that testimony will be barred as it is "specialized knowledge" requiring a qualified expert under Rule 702. That being said, Regional West denies there will be any such testimony at trial, explaining "[t]he contract defines what Sodexo was supposed to do. The issue is whether Sodexo met its obligations under the contract and whether Regional West suffered damages from Sodexo's failure to perform," not whether the standard of care applicable to construction project managers was met[7]. (Filing No. 79, at CM/ECF p. 2).

Sodexo's motion in limine regarding the standard of care applicable to construction project managers is granted, but in all other respects, the motion is denied.

Accordingly,

IT IS ORDERED:

---

[7] Regional West points out that standard of care is a negligence concept, not applicable to this breach of contract case. (Filing No. 79, at CM/ECF p. 1). While the court agrees, Sodexo's argument that Regional West has predicated its counterclaim, at least in part, "on the perceived failures of Sodexo's Project Manager to meet an extra-contractual standard of care" is persuasive. (Filing No. 81, at CM/ECF pp. 2-3).

1) Sodexo's motion for partial summary judgment, (Filing No. 53), is denied in its entirety.

2) Sodexo's motion in limine, (Filing No. 76), is granted to exclude any Regional West witness from testifying to the standard of care applicable to construction project managers at trial.

Dated this 21st day of October, 2019.

                                        BY THE COURT:

                                        *s/ Cheryl R. Zwart*
                                        United States Magistrate Judge